EAST BATON ROUGE PARISH
Filed Mar 31, 2022 8:18 AM
C-717341
23
Deputy Clerk of Court
E-File Received Mar 30, 2022 3:17 PM

Case 3:22-cv-00840-JWD-RLB   Document 1-2   10/27/22   Page 1 of 16

Exhibit A original petition

## 19th JUDICIAL DISTRICT COURT FOR THE PARISH OF EAST BATON ROUGE

## STATE OF LOUISIANA

NO. _____                                        DIVISION " ____ "

### JOHN TB DOE

### VERSUS

### DEFENDANT 1 and ABC INSURANCE COMPANY

FILED: _____                    _____
                                                    **DEPUTY CLERK**

### PETITION FOR DAMAGES

**NOW INTO COURT**, through undersigned counsel, comes **JOHN TB DOE** (hereinafter "PETITIONER"), a person of full age who was domiciled in the State of Louisiana during all times relevant, and who respectfully represents as follows:

1.

The following parties are made Defendants in this lawsuit and are liable to Petitioner for damages, together with legal interest from the date of the judicial demand until paid:

    a. **DEFENDANT 1,** a foreign corporation registered and doing business in Louisiana with a principal business establishment at 1000 Salesian Lane, Marrero, Louisiana;

    b. **ABC INSURANCE COMPANY**, upon information and belief, a foreign insurance company authorized to and doing business in the State of Louisiana which is believed to have issued a policy insuring Defendant 1, for the acts complained of herein and during the relevant time periods herein.

2.

Venue is proper in this the Parish of East Baton Rouge, State of Louisiana, pursuant to Louisiana Code of Civil Procedure art. 42(7) as ABC INSURANCE COMPANY is a foreign insurance company. The acts and omissions giving rise to this cause of action are alleged to have occurred in whole or in part in Jefferson Parish, where DEFENDANT 1 failed to supervise its employees as well as Petitioner, a minor child entrusted to DEFENDANT 1's care at the time of the abuse.

3.

At all times relevant, DEFENDANT 1 was a religious order of the Roman Catholic Church who conducted business activities throughout the State of Louisiana at the time of the sexual abuse alleged herein. This included, but was not limited to, teaching students and administering operations at Archbishop Shaw High School in Marrero, Louisiana, and supervising the employee accused of sexually abusing Petitioner as set forth herein.

4.

Because of the collaborative actions by Defendants, they are justly and truly indebted unto Petitioner jointly and *in solido* for all damages. Pursuant to L.S.A.-C.C. Art. 2324 they are solidarily liable for the damages incurred by Petitioner for their conspiracy to commit the intentional and willful actions as listed and described herein, together with the legal interest thereon from the date of judicial demand and all costs for these proceedings.

## FACTS RELATING TO PETITIONER

5.

Petitioner was born in 1960.

6.

Petitioner attended Archbishop Shaw High School, a private Roman Catholic High School located in Marrero, Louisiana, from approximately 1974 to 1978, beginning in his freshman year.

7.

Petitioner was raised a devout Catholic who was taught to revere and respect all religious authority figures, including Catholic priests. This included RELIGIOUS ORDER EMPLOYEE NO. 1, a Roman Catholic priest and teacher at Archbishop Shaw High School.

8.

At all times relevant, Petitioner was a minor parishioner entrusted to the care and custody of Defendant 1's employees and agents, including, but not limited to, RELIGIOUS ORDER EMPLOYEE NO. 1 and RELIGIOUS ORDER EMPLOYEE NO. 1's religious superiors and colleagues within Defendant 1.

9.

On at least one occasion during Petitioner's freshman year (1974-1975), RELIGIOUS ORDER EMPLOYEE NO. 1 sexually abused Petitioner by engaging the then-minor Petitioner in illegal sexual contact, including but not limited to, fondling and masturbation.

10.

As a result of the sexual abuse by RELIGIOUS ORDER EMPLOYEE NO. 1, Petitioner has suffered a lifetime of physical and psychological effects.

### FACTS RELATING TO DEFENDANT 1'S LIABILITY

11.

RELIGIOUS ORDER EMPLOYEE NO. 1 was a member of and ordained a Roman Catholic priest by DEFENDANT 1 in 1966. Throughout his tenure with DEFENDANT 1, RELIGIOUS ORDER EMPLOYEE NO. 1 was assigned to various high schools and churches staffed by DEFENDANT 1. Upon information and belief, he was assigned by DEFENDANT 1 to work as a priest at the following:

- 1959-1968: St. Dominic Savio High School (Boston, MA)
- 1968-1971: Salesian Day High School for Boys; Salesian Resident Junior Seminary; Camp Salesian for Boys; Salesian Retreat House for Boys; Salesian Boys Club (Cedar Lake, IN)
- 1971-1975: Don Bosco Technical High School (Paterson, NJ)
- 1975-1979: Archbishop Shaw High School (Marrero, LA)
- 1979-1981: Salesian Junior Seminary (Goshen, NY)
- 1981-1983: Don Bosco High School for Boys (Ramsey, NJ)
- 1983-2003: St. John Bosco Church (Birmingham, AL)
- 1983-2003: Holy Rosary (Birmingham, AL)
- 2003-2008: Salesian Provincial House (New Rochelle, NY)

12.

RELIGIOUS ORDER EMPLOYEE NO. 1 remained a priest with DEFENDANT 1 until 2008, when he was laicized by the Holy See. He has since been accused of molesting multiple children he met through his position as a DEFENDANT 1 priest, and his name appears on several lists of priests credibly accused of sexual abuse that have been published by various dioceses across the country, as well as the list published by DEFENDANT 1 in 2021. Upon information and belief,

3

RELIGIOUS ORDER EMPLOYEE NO. 1's laicization was directly related to allegations that he sexually abused minor children entrusted to his care as a priest.

13.

At all times relevant hereto, each of the Provincial Superiors of DEFENDANT 1 ("the Defendant 1 Provincial"), by virtue of their respective office, acted as managing agents of DEFENDANT 1 and were ultimately responsible for the supervision, oversight, management, retention, and control of the actions and conduct of all DEFENDANT 1 priests, including RELIGIOUS ORDER EMPLOYEE NO. 1, as well as the safety and well-being of the children entrusted to the care of DEFENDANT 1, including Petitioner.

14.

At all times relevant hereto, RELIGIOUS ORDER EMPLOYEE NO. 1 served at the pleasure of DEFENDANT 1 Provincials, under the direct supervision of the Provincials and his designees, and RELIGIOUS ORDER EMPLOYEE NO. 1 was otherwise subject to the authority of his Provincials (and his designees).

15.

In a purposeful effort to conceal the horrific misdeeds of priests who sexually abused kids entrusted to their care, and to protect DEFENDANT 1 and their priests from scrutiny, scandal, and potential financial losses, DEFENDANT 1, explicitly and implicitly, through words, actions and teachings, misrepresented to Petitioner, parishioners, and the general public that they each addressed all allegations of child sexual abuse swiftly and immediately upon learning of them.

16.

DEFENDANT 1 intended for the Catholic faithful and the public to believe, then, that any priest or nun with an assignment to protect and care for children had never been accused or suspected of sexual abuse of minors, and that the priest was chaste, safe to be around children, and otherwise fit for ministry. At all times relevant, this included RELIGIOUS ORDER EMPLOYEE NO. 1, who was a priest in active ministry at the time of the misconduct alleged herein.

17.

As a result of those representations by DEFENDANT 1, the vulnerable Petitioner, the Catholic faithful, and the general public believed and trusted that DEFENDANT 1 priests,

4

including RELIGIOUS ORDER EMPLOYEE NO. 1, were benevolent and trustworthy stewards of God who were fit for ministry and the care of children, and acted only in the best interests of the communities they served, including vulnerable children like the Petitioner. In reality, these misrepresentations only served to allow predators like RELIGIOUS ORDER EMPLOYEE NO. 1 to sexually abuse more children, including Petitioner.

18.

RELIGIOUS ORDER EMPLOYEE NO. 1's sexual abuse of Petitioner was accomplished in whole or in part by virtue of RELIGIOUS ORDER EMPLOYEE NO. 1's position as a Roman Catholic priest, and the corresponding trust that Petitioner and his family placed in RELIGIOUS ORDER EMPLOYEE NO. 1 as a result of his position with DEFENDANT 1.

19.

At all times material, Petitioner, and those responsible for his safety and well-being, entrusted his safety and well-being to DEFENDANT 1 and their agents, including, but not limited to, RELIGIOUS ORDER EMPLOYEE NO. 1, and his superiors. DEFENDANT 1's agents and employees had a corresponding obligation and duty to be solicitous for, as well as protective of, the Petitioner in the exercise of their positions of trust, confidentiality and authority.

20.

At all times relevant hereto, DEFENDANT 1 owed Petitioner and those entrusted with his care a duty of good faith and fair dealing to act with the highest degree of trust and confidence. This included the duty to warn, disclose, and protect children, including Petitioner, from sexual abuse and exploitation by religious authority figures who, like RELIGIOUS ORDER EMPLOYEE NO. 1, DEFENDANT 1 falsely promoted as being fit, chaste, and moral when they knew or should have known otherwise.

21.

Upon information and belief, RELIGIOUS ORDER EMPLOYEE NO. 1 sexually abused other children before, during, and after the time they each sexually abused Petitioner. DEFENDANT 1, by and through their agents, managers, employees, and directors, knew, or through the exercise of reasonable care, should have known that RELIGIOUS ORDER EMPLOYEE NO. 1 was a serial sexual abuser of minor children, yet DEFENDANT 1 took no

action to protect Petitioner or other children who encountered RELIGIOUS ORDER EMPLOYEE NO. 1 by virtue of his position as a DEFENDANT 1 priest from abuse.

22.

Upon information and belief, DEFENDANT 1 had additional actual or constructive notice that RELIGIOUS ORDER EMPLOYEE NO. 1 had a sexual interest in children and that he regularly used his position with DEFENDANT 1 to groom, sexually abuse, and silence minor children prior to Petitioner's abuse.

23.

Upon information and belief, despite what DEFENDANT 1 knew or should have known before Petitioner's abuse, DEFENDANT 1 failed to warn Petitioner, his family, law enforcement, parishioners, the general public, and/or others outside DEFENDANT 1's inner sanctum about RELIGIOUS ORDER EMPLOYEE NO. 1's propensity to sexually abuse minor children.

24.

At all times relevant, DEFENDANT 1's Provincial knew of a general problem of priests under his supervision and control grooming and sexually molesting children who came into contact with their assailants by virtue of their positions with DEFENDANT 1. At all relevant times, DEFENDANT 1's Provincial knew that this was a widespread, ubiquitous, and systemic problem within the DEFENDANT 1's ranks involving many abusers and numerous victims.

25.

Despite receiving credible allegations of sexual abuse of children by members of their Orders, DEFENDANT 1 acted to conceal these allegations in an effort to avoid scandal and accountability.

26.

This concealment was in accordance with a policy of DEFENDANT 1 as agents and the Holy See as principal. In 1922, the Holy See released a confidential document to its bishops and other officials of Catholic entities regarding the handling of cases of solicitation of sex in the confessional by priests. This document mandated a specific procedure for the Holy See's agents, including the religious superiors who received it, to use when a priest sexually abused children using the confessional. This document required that the matter be handled with the strictest of

6

secrecy by all involved. The 1922 document showed that the Holy See and its agents were fully aware that there was a systemic problem of Roman Catholic clergy sexually molesting children and wanted to alert its agents, including DEFENDANT 1's agents, of the problem.

27.

In 1962, the Holy See released the confidential document, *"Instruction on the Manner of Proceeding in Cases of Solicitation"* (The Vatican Press, 1962) (hereinafter *"Crimen Sollicitationis"*). The heading of the document states, "from the Supreme and Holy Congregation of the Holy Office to all patriarchs, Bishops, bishops and other diocesan ordinaries 'even of the oriental right,'" and it contains specific instructions regarding the handling of child sexual abuse by clergy. According to the document itself, it is an instruction, ordering upon those to whom it pertains to follow a specific protocol while addressing allegations of child sexual abuse, and to keep all matters relating to allegations of sexual abuse, including the existence of the document itself, secret. It also directed the document be stored in the secret archives of its agents, to become part of the agents' institutional knowledge and direction.

28.

*Crimen Sollicitationis* reinforced that the Holy See and its agents, including DEFENDANT 1, had knowledge that there was a general and systemic problem of Catholic clergy sexually molesting children they encountered by virtue of their positions as priests even before 1962. Nothing in the 1922 document or in *Crimen Sollicitationis* suggested that the problem of religious authority figures sexually abusing children was limited only to ordained diocesan priests, but rather that it was a widespread problem in the worldwide Roman Catholic Church as a whole. The documents each put recipients on notice of a broader problem of religious figures misusing their roles as religious authority figures to accomplish the sexual abuse of children, including religious order priests, as well as men and women religious, including nuns.

29.

Based upon what it knew about its priests generally, and what it knew or should have known about RELIGIOUS ORDER EMPLOYEE NO. 1 specifically, DEFENDANT 1 knew or should have known that RELIGIOUS ORDER EMPLOYEE NO. 1 posed a foreseeable risk of harm to minor children before 1974, including but not limited to, Petitioner.

7

30.

Despite actual and/or constructive knowledge of RELIGIOUS ORDER EMPLOYEE NO. 1's deviant sexual interests and behaviors with minor children, DEFENDANT 1 undertook no meaningful investigation or responsive action against RELIGIOUS ORDER EMPLOYEE NO. 1 whatsoever and continued to give him unfettered access to minor children entrusted to his care, including Petitioner.

31.

DEFENDANT 1 placed RELIGIOUS ORDER EMPLOYEE NO. 1 in a position to do harm to third parties he encountered by virtue of his position with DEFENDANT 1, including Petitioner. RELIGIOUS ORDER EMPLOYEE NO. 1 used his position to identify potential victims and to gain their trust and exercise authority over them. It was reasonably foreseeable to DEFENDANT 1 that RELIGIOUS ORDER EMPLOYEE NO. 1 would use his position with DEFENDANT 1 to sexually abuse and exploit those he encountered by virtue of his position with DEFENDANT 1, including Petitioner.

32.

DEFENDANT 1 each committed additional acts and omissions regarding RELIGIOUS ORDER EMPLOYEE NO. 1's sexual abuse of Petitioner that have not yet been made public but that made Petitioner vulnerable to sexual abuse by RELIGIOUS ORDER EMPLOYEE NO. 1.

33.

Petitioner and those entrusted with his care had no opportunity to protect Petitioner against a danger that was solely within the knowledge of DEFENDANT 1.

34.

DEFENDANT 1 created a foreseeable risk of sexual abuse by RELIGIOUS ORDER EMPLOYEE NO. 1 for the Petitioner, specifically, and for minor children who encountered RELIGIOUS ORDER EMPLOYEE NO. 1 through his work as a priest generally. Despite this, DEFENDANT 1: (1) failed to take necessary precautions to warn Petitioner (or anyone else) about RELIGIOUS ORDER EMPLOYEE NO. 1's propensity to sexually abuse minor children entrusted to their care and counsel, (2) failed to adequately supervise RELIGIOUS ORDER EMPLOYEE NO. 1, (3) failed to adequately supervise the Petitioner, (4) failed to take appropriate remedial

action when DEFENDANT 1 knew or should have known of the risk created, and (5) otherwise failed to act to lessen the risk that RELIGIOUS ORDER EMPLOYEE NO. 1 would sexually abuse the Petitioner.

### COUNT ONE
### *DEFENDANT ONE*
### NEGLIGENCE

35.

Petitioner incorporates paragraphs 1 through 34 of this Complaint as if set forth fully herein.

36.

At all times relevant, a servant-master relationship existed between DEFENDANT 1 and RELIGIOUS ORDER EMPLOYEE NO. 1 such that DEFENDANT 1 controlled the means and manner of the performance of RELIGIOUS ORDER EMPLOYEE NO. 1's job duties, including his conduct with minor children. Based upon what it knew or should have known about RELIGIOUS ORDER EMPLOYEE NO. 1's sexual interest in minor children, DEFENDANT 1 had a duty to control RELIGIOUS ORDER EMPLOYEE NO. 1's conduct during all times that he was acting, or otherwise empowered to act, as a priest, including but not limited to, controlling his actions with children he encountered by virtue of his position as a priest, like Petitioner.

37.

At all times relevant, a servant-master relationship existed between DEFENDANT 1 and RELIGIOUS ORDER EMPLOYEE NO. 1 whereby RELIGIOUS ORDER EMPLOYEE NO. 1 was granted significant freedom to perform his job duties as Roman Catholic priest, and to exercise his position of trust and authority over children entrusted to DEFENDANT 1's care, including the then-minor Petitioner.

38.

At all times relevant, a servant-master relationship existed between RELIGIOUS ORDER EMPLOYEE NO. 1 and DEFENDANT 1 that required DEFENDANT 1 to act with reasonable care in the supervision of RELIGIOUS ORDER EMPLOYEE NO. 1's performance of his job duties, including properly supervising RELIGIOUS ORDER EMPLOYEE NO. 1's interactions

with minor children, as well as RELIGIOUS ORDER EMPLOYEE NO. 1's adherence to DEFENDANT 1's policies and procedures regarding minor children.

39.

At all times relevant, a servant-master relationship existed between RELIGIOUS ORDER EMPLOYEE NO. 1 and DEFENDANT 1 that required DEFENDANT 1 to act with reasonable care in its retention of RELIGIOUS ORDER EMPLOYEE NO. 1 based upon what it knew or should have known about his unfitness for ministry, including a duty to take further action(s) such as investigation, discharge, or reassignment to a position that did not allow him access to minor children once it knew or should have known of RELIGIOUS ORDER EMPLOYEE NO. 1's sexual interest in children.

40.

At all times relevant hereto, DEFENDANT 1's own negligence as RELIGIOUS ORDER EMPLOYEE NO. 1's employer created the risk of harm to Petitioner, and, as a result, DEFENDANT 1 had a common-law duty to make a reasonable effort to avoid further harm to others, including Petitioner.

41.

At all times relevant hereto, DEFENDANT 1 had a duty to protect third parties, including but not limited to the Petitioner, who were within the foreseeable risk of harm created by RELIGIOUS ORDER EMPLOYEE NO. 1 because that risk was not readily discoverable by Petitioner prior to his sexual abuse, due in large part to DEFENDANT 1's grand scheme to ignore, misrepresent, and otherwise coverup sexual abuse allegations so they did not become known outside DEFENDANT 1's inner sanctum.

42.

At all relevant times, DEFENDANT 1 knew, or in the exercise of reasonable care, should have known that RELIGIOUS ORDER EMPLOYEE NO. 1 was unfit, dangerous, and a threat to the health, safety and welfare of those entrusted to his care as DEFENDANT 1's employee, including minor children like Petitioner.

43.

Given actual and/or constructive knowledge of RELIGIOUS ORDER EMPLOYEE NO. 1's propensity to sexually abuse minor children, the sexual abuse of Petitioner was reasonably foreseeable to DEFENDANT 1.

44.

With such actual or constructive knowledge, DEFENDANT 1 provided RELIGIOUS ORDER EMPLOYEE NO. 1 with unfettered access to children, including Petitioner. Despite knowing that children who encountered RELIGIOUS ORDER EMPLOYEE NO. 1 by virtue of his position as a priest were in the zone of foreseeable risk for sexual abuse by RELIGIOUS ORDER EMPLOYEE NO. 1, DEFENDANT 1 failed to take necessary precautions to lessen that risk.

45.

At all relevant times, DEFENDANT 1 created an environment which fostered sexual abuse of children that it had a duty to protect, including Petitioner.

46.

At all relevant times, DEFENDANT 1 had inadequate policies and procedures to protect those entrusted to its care and protection, including Petitioner.

47.

As a result of the failure to act with reasonable care toward the Petitioner, DEFENDANT 1 breached one or more of the duties owed to Petitioner and failed to protect him from the sexual abuse and lewd and lascivious acts committed by RELIGIOUS ORDER EMPLOYEE NO. 1 while he was an agent and employee of DEFENDANT 1, at times when RELIGIOUS ORDER EMPLOYEE NO. 1 was authorized by DEFENDANT 1 to present himself as a priest and at locations in the possession and control of DEFENDANT 1.

48.

As a direct and proximate result of DEFENDANT 1's failure to act with reasonable care in the discharge of one or more of its duties to Petitioner, Petitioner suffered severe and permanent psychological, emotional, and physical injuries, shame, humiliation, and the inability to lead a

normal life. He has incurred, and will continue to incur, costs for treatment. These injuries are permanent and ongoing in nature.

49.

Therefore, Petitioner now seeks compensatory and punitive damages for DEFENDANT 1's negligence.

## COUNT TWO
## *DEFENDANT 1*
## VICARIOUS LIABILITY

50.

Petitioner incorporates paragraphs 1 through 34 of this Complaint as if set forth fully herein.

51.

The sexual abuse of Petitioner by RELIGIOUS ORDER EMPLOYEE NO. 1 was accomplished by virtue of his position as a Roman Catholic Priest employed by DEFENDANT 1, a position which made him an authority figure to and engendered the trust of children entrusted to DEFENDANT 1's care, including the then-minor Petitioner.

52.

RELIGIOUS ORDER EMPLOYEE NO. 1's sexual abuse of Petitioner occurred on premises owned, operated, possessed, and/or otherwise controlled by DEFENDANT 1 and during RELIGIOUS ORDER EMPLOYEE NO. 1's hours of employment with DEFENDANT 1.

53.

Petitioner's sexual abuse by RELIGIOUS ORDER EMPLOYEE NO. 1 was reasonably incidental to the performance of RELIGIOUS ORDER EMPLOYEE NO. 1's duties as DEFENDANT 1's employee.

54.

RELIGIOUS ORDER EMPLOYEE NO. 1's sexual abuse of Petitioner was primarily and directly rooted in his employment by DEFENDANT 1 and could not have occurred by for the authority, freedom, and trust granted him by DEFENDANT 1.

55.

DEFENDANT 1 is vicariously liable for the acts and omissions of its agents, including but not limited to, RELIGIOUS ORDER EMPLOYEE NO. 1, under L.S.A.-C.C. Arts. 2315, 2317, and 2320, and/or the doctrine of *respondeat superior*, during the time that they were acting as employees and/or agents of the DEFENDANT 1, or otherwise exercising the positions of trust and authority granted to them by DEFENDANT 1.

56.

Therefore, Petitioner now seeks compensatory and punitive damages for DEFENDANT 1's vicarious liability.

57.

The actions of DEFENDANT 1 outlined above in Counts I and II constitute wanton and reckless disregard for the rights and safety of Petitioner through criminal sexual activity under Louisiana Civil Code art. 2315.7. Petitioner therefore seeks and is entitled to an award for exemplary damages.

## JURY DEMAND

58.

Petitioner is entitled to and prays for a trial by jury as to all claims asserted herein.

WHEREFORE, Petitioner, JOHN TB DOE prays that DEFENDANT 1 and ABC INSURANCE COMPANY be cited and served with this Petition for Damages and that after due proceedings are had that there be judgment in favor of Petitioner and against DEFENDANT 1 in an amount that will fully compensate Petitioner for physical injury, mental and emotional pain and suffering, humiliation, anger, psychological damage and/or impairment, diminished quality of life,

13

loss of enjoyment of life, together with legal interest from the date of a judicial demand until paid, all costs of these proceedings, and for all general and equitable relief as may be determined by a judge and jury.

RESPECTFULLY SUBMITTED:
THE BEZOU LAW FIRM

Jacques F. Bezou (3037)
Jacques F. Bezou, Jr. (33728)
Payton S. Lachney (39947)
534 E. Boston Street
Covington, LA 70433
Telephone: (985) 892-2111
Facsimile: (985) 892-1413
jb2@bezou.com

-        and        -

Adam D. Horowitz
adam@adamhorowitzlaw.com
Jessica D. Arbour
jessica@adamhorowitzlaw.com
Horowitz Law
110 E. Broward Boulevard, Suite 1850
Ft. Lauderdale, FL 33301
Telephone: (954) 641-2100
(*Pro Hac Vice* Application/Motion to filed)

***ATTORNEYS FOR PETITIONER***

EAST BATON ROUGE PARISH
C-717341
Filed Mar 31, 2022 8:18 AM
Deputy Clerk of Court
E-File Received Mar 30, 2022 3:17 PM

Case 3:22-cv-00840-JWD-RLB   Document 1-2   10/27/22   Page 15 of 16

## 19th JUDICIAL DISTRICT COURT FOR THE PARISH OF EAST BATON ROUGE

## STATE OF LOUISIANA

NO. _____    DIVISION " \_\_\_\_ "

### JOHN TB DOE

### VERSUS

### DEFENDANT 1 and ABC INSURANCE COMPANY

FILED: _____   _____
                                                    **DEPUTY CLERK**

### **CERTIFICATE OF ATTORNEY**

1. I am a licensed attorney in the State of Louisiana.

2. I have reviewed and am otherwise familiar with the relevant facts of this case.

3. Prior to the filing of this action, I consulted with Dr. Ashley Carey, a licensed mental health practitioner practicing in the State of Louisiana, who has conducted an interview of the Petitioner and who I reasonably believe has knowledge of the facts and issues involved in this particular action.

4. Based upon my review of the relevant facts in this case, as well as my consultation with Dr. Carey, I have concluded that there is reasonable and meritorious cause for the filing of the attached Petition for Damages.

Signed this 30th day of March, 2022.

_____
JACQUES F. BEZOU, JR.
THE BEZOU LAW FIRM

16



# DR. ASHLEY CONSTANCE CAREY LPC, LLC

LICENSED PROFESSIONAL COUNSELOR
PH. D. IN ADVANCED STUDIES IN HUMAN BEHAVIOR
MASTERS IN COMMUNITY MENTAL HEALTH AND SCHOOL COUNSELING
CERTIFIED CLINICAL TRAUMA PROFESSIONAL
EXPERT WITNESS

## CERTIFICATE OF MENTAL HEALTH PRACTITIONER:

1. I am a Licensed Professional Counselor (lic. no. 5539) practicing in the State of Louisiana.

2. I am not a party to this action.

3. On March 9, 2022, I conducted an interview of ▓▓▓▓▓ the Plaintiff of this action, at the request of his attorneys at The Bezou Law Firm and Horowitz Law.

4. I am otherwise knowledgeable of the relevant facts and issues in this action.

5. In my professional opinion, based upon my knowledge of the facts and issues, I conclude there is a reasonable basis to believe that ▓▓▓▓▓ was subjected to criminal sexual activity during his childhood by ▓▓▓▓▓.

If there is anything else I can do or provide please call 504-298-9879 or drcareycounselingservices@gmail.com

GENUINELY AND SINCERELY,    DATE: 3/9/2022

*Ashley Carey, Ph.D.*

DR. ASHLEY CONSTANCE CAREY, LPC

412 Lafayette St. Gretna, LA 70053    504-298-9879    ashleycareyphd@gmail.com



EXHIBIT A